**UNITED STATES of America,**

v.

**Calvin G. THOMAS, Charles C. Copney, Wendell Ronald Charles, Calvin George Thomas, Appellant.**

No. 91–3820.

United States Court of Appeals, Third Circuit.

Argued on May 4, 1993.

Decided July 7, 1993.

---

Thomas W. Corbett, Jr., U.S. Atty., Paul J. Brysh, Michael L. Ivory (argued), Pittsburgh, PA, for appellee.

Philip A. Ignelzi (argued), Ogg, Jones, DeSimone & Ignelzi, Pittsburgh, PA, for appellant.

Before: COWEN, ROTH and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROTH, Circuit Judge.

### I.

Appellant Calvin Thomas was convicted of conspiracy to steal government property, interstate transportation of stolen goods and theft of government property. This appeal concerns the prejudicial effect of the introduction at trial of the guilty pleas of Thomas's co-conspirators. Defense counsel moved in limine for the exclusion of the guilty pleas based on a pledge that he would not elicit any information about the pleas from the co-conspirators. The district court denied the motion, holding that the guilty pleas were being introduced for a proper purpose and that the court's limiting instructions to the jury would cure any prejudice to the defendant. We hold that the admission of this evidence by the district court constituted er-

ror so prejudicial that it requires reversal of Thomas's conviction.

## II.

Appellant Calvin Thomas worked for the United States Army as a civilian heavy mobile equipment inspector and was a member of the Army Reserve, where he served as a property book officer. Thomas participated in an Army Reserve road-building project in Honduras in 1988. Thomas was responsible for overseeing the repair and return of road-building equipment that was borrowed from the 99th Army Reserve Command in Oakdale, Pennsylvania. The equipment was shipped from Honduras to Fort Meade, Maryland, where it was serviced and repaired before being returned to the 99th Command.

As the repair and return project neared completion, Thomas realized that many extra parts would remain. Thomas made arrangements with two fellow reservists, Wendell Charles and Charles Copney, to ship roughly $30,000 worth of spare parts in three tractor-trailer loads to Charles's and Thomas's private garages in Hopwood, Pennsylvania. Copney, an Army Reservist and truck driver, transported the spare parts to Hopwood Enterprises, Charles's firm. Both Charles and Copney pled guilty to conspiracy and to theft of government property and both testified against Thomas as part of their plea agreements.

Thomas did not dispute that in violation of Army regulations he arranged with Charles and Copney to transport Army material and to store it at his own garage and at Charles's company's facilities. However, Thomas maintained that he had no intention of stealing the transported property. Thomas argued that he at all times intended to transfer the parts and equipment back to the Army base where he worked as the need for the parts arose. Thomas argued that Army regulations would have prevented his unit from retaining the spare parts had he properly logged them and returned them to the 99th Command.

Thomas did in fact return a substantial portion of the Army equipment before his arrest. However, Charles testified that news of an impending police search motivated Thomas to call him and tell him to conceal any government parts remaining at Hopwood Enterprises. Copney also testified that he intended to steal the spare parts. Thus, the issue of Thomas's specific intent was the major focus of testimony at trial, making the introduction of evidence of the co-conspirators's guilty pleas particularly damaging to Thomas's defense.

Prior to the introduction at trial of evidence of the guilty pleas of Thomas's co-conspirators, defense counsel made a motion in limine for the exclusion of such evidence. Defense counsel disavowed any intention to use the co-conspirators's guilty pleas to impeach their credibility. The district court denied the motion. Both Charles and Copney testified against Thomas and their guilty pleas were elicited on direct examination by the government. The district court gave cautionary instructions to the jury concerning the testimony of Charles and Copney both before and after their testimony.

In ruling on a post-trial motion by Thomas for his release pending appeal, the district court revisited the propriety of admitting the guilty pleas and succinctly restated its reasons for admitting the evidence:

> [T]he government properly introduced evidence of the guilty pleas to aid the jury in assessing Copney's and Charles' credibility, to establish Copney's and Charles' acknowledgement of their participation in the offense, and to counter the inference that Copney and Charles had not been prosecuted, and that Thomas alone had been prosecuted....

D.Ct. opinion of January 14, 1992, at 11.

The jury found Thomas guilty of conspiracy to steal government property, interstate transportation of stolen goods and theft of government property. Thomas was sentenced to twenty-four months imprisonment.

## IV.

The jurisdiction of the district court rested upon 18 U.S.C. § 3231. The appellate jurisdiction of this Court is pursuant to 28 U.S.C. § 1291.

■ The district court relied on several cases in which evidence of co-conspirators's guilty pleas was admitted for limited purposes. This Court has repeatedly recognized that evidence of a co-conspirator's guilty plea may be introduced at trial for two purposes: first, to blunt the impact on a government witness's credibility of having evidence of a guilty plea and plea agreement brought out on cross examination by the defense, and, second, to prevent any improper inference by the jury that the defendant has been singled out for prosecution while the co-conspirators have not been prosecuted. *See United States v. Gambino*, 926 F.2d 1355, 1363 (3d Cir.1991) (guilty plea introduced to blunt attack on credibility); *United States v. Inadi*, 790 F.2d 383, 384 n. 2 (3d Cir.1986) (guilty plea introduced to prevent inference of selective prosecution).

However, the reasons of the district court for admitting the evidence of Charles's and Copney's guilty pleas are inadequate to support the risk of jury prejudice under the facts of this case. In general, we have allowed evidence of guilty pleas to bolster the credibility of government witnesses. The district court here stated in denying the defense motion that evidence of the guilty pleas "goes to the [witnesses'] credibility." *See* transcript of June 24, 1991, at 8. In *Gambino*, this Court upheld the introduction of co-conspirators's guilty pleas, stating:

> In any criminal trial, the credibility of the prosecution's witnesses is central. By eliciting the witness' guilty plea on direct examination, the government dampens attacks on credibility, and forecloses any suggestion that it was concealing evidence.

*Gambino*, 926 F.2d at 1363 (citations omitted). However, as represented by defense counsel, no challenge to the witnesses' credibility based on their plea agreements with the government was forthcoming on cross-examination. Thus, there was no need to protect the credibility of the prosecution's witnesses from attack by allowing the preemptive introduction of evidence of their guilty pleas.

The second justification offered by the district court, that the jury would impermissibly conclude Thomas alone was being prosecuted, does not justify admission of his co-conspirators's guilty pleas. In the sole case in this Circuit directly citing this reason to support admitting a co-conspirator's guilty plea, *United States v. Inadi*, 790 F.2d 383 (3d Cir.1986), the district court admitted evidence of the guilty pleas only "in order to rebut defense counsel's persistent attempts on cross-examination to raise an inference that the co-conspirators had not been prosecuted, and that defendant was being singled out for prosecution." *Id.* at 384 n. 2. In this case, the district court certainly could have instructed the jury that they need concern themselves only with the guilt or innocence of defendant Thomas and that the involvement of any other persons in any alleged scheme was not this jury's concern. There was no need to mention the guilty pleas to deter any concern that Thomas was being singled out for prosecution.[1]

The third reason offered in support of the admission of the guilty pleas by the district court was that such evidence would "establish Copney's and Charles' acknowledgement of their participation in the offense." D.Ct. opinion of January 14, 1992, at 11. Yet, Copney and Charles testified about their roles in the transportation of the stolen property involved without facing any challenge from the defense. The defense in this case even acknowledged *the defendant's* participation in all of the actions constituting the offense. The only issue at trial was whether Thomas had the requisite intent to conspire to steal government property. Thus, the defense did not raise any of the three possible challenges to the credibility of the government witnesses that might have justified the district court's admission of the evidence of the guilty pleas—the defense pledged not to raise the guilty pleas on cross-examination, the defense did not raise inferences that Thomas alone was being prosecuted, and the defense did not challenge the participation of

---

1. If defense counsel should then have attempted to raise an inference on cross-examination that Thomas was being unfairly singled out for prose-

cution, additional remedial steps could have been taken.

the co-conspirators or even the defendant in the actions that constituted the crime.

 While the credibility of the prosecution's witnesses may be "central" in a criminal case, as noted by this Court in *Gambino*, the requirement that a defendant receive a fair trial is nevertheless supreme, and the introduction of a co-conspirator's guilty plea without a proper purpose may deprive a defendant of a fair trial:

> Even if otherwise appropriate, the challenged references to guilty pleas could still constitute reversible error if used as substantive evidence of the defendants' guilt. As we have noted, such use poses the threat that a defendant will be found guilty not on the basis of the evidence against him but on the basis of a shadow cast by cases against others.

*Gambino*, 926 F.2d at 1367 (citations omitted). As the only issue at trial was Thomas's intent, and none of the three reasons offered by the district court for admitting evidence of the guilty pleas withstands scrutiny, the likely effect of Charles's and Copney's guilty pleas was to suggest improperly to the jury that Thomas was also guilty of conspiracy.

 In several cases where evidence of a co-conspirator's guilty plea was entered, we have held that proper limiting instructions from the court cured the possible prejudice to the defendant. In its preliminary instructions to the jury, the district court stated: "[T]he fact that ... Copney and ... Charles have pleaded guilty to a crime is not evidence that the defendant is guilty, and you cannot consider this against the defendant in any way." *See* Government's Supplemental Appendix at 2. While the defendant does not challenge the sufficiency of the district court's limiting instructions, it seems plain from *Toner* and *Bisaccia* that the lack of a proper purpose for admitting the guilty pleas to conspiracy charges is not cured by limiting instructions. As stated in *Gullo*, "[i]t is the general rule of this Circuit that while the evidence of a guilty plea by a co-conspirator is not admissible, under some circumstances, curative instructions are adequate to remove the harm *where the pleas are to substantive counts.*" *United States v. Gullo*, 502 F.2d 759, 761 (3rd Cir.1974) (citations omitted)

(emphasis added). In this case, the admitted guilty pleas were to the charge of conspiracy, and the other crimes charged were the substantial acts of that conspiracy. This Court has long recognized the special significance of admitting evidence of a co-conspirator's guilty plea to a conspiracy charge:

> The guilty plea to a conspiracy charge carries with it more potential harm to the defendant on trial because the crime by definition requires the participation of another. The jury could not fail to appreciate the significance of this and would realize ... that it "takes two to tango." A plea by a co-conspirator thus presents a unique situation which may require the courts to scrutinize more closely the purported remedial effects of instructions to the jury.

*Gullo*, 502 F.2d at 761. In the absence of a proper purpose for the admission of the guilty pleas, the curative instructions of the district court were not sufficient to remove the prejudice to Thomas presented by the evidence of his co-conspirators's guilty pleas on conspiracy charges.

The defense clearly stated to the court during the colloquy on its motion in limine that it had no intention of asking any questions about Thomas's co-conspirators's guilty pleas if its motion was granted. As Thomas's intent was a central issue in the case, defense counsel argued that the introduction of the co-conspirators's guilty pleas and any testimony about their intent to conspire to steal government property would seriously prejudice Thomas's case. The credibility concerns cited by the district court in justifying its admission of the pleas were irrelevant, and the limiting instructions given were therefore inadequate to remove the prejudice caused in this instance. To uphold the admission of guilty pleas under these circumstances would thus effectively strip the *Toner* line of cases of any meaning.

 Finally, the government argues that the admission of the guilty pleas was harmless error due to the overwhelming evidence at trial of Thomas's guilt. Errors committed by a district court in a criminal case are considered harmless if the reviewing court

determines that there is a "high probability" that the error did not affect substantial rights. *United States v. Werme*, 939 F.2d 108, 116–17 (3d Cir.1991). Under this standard, a reviewing court must have "a sure conviction that the error did not prejudice the defendant, but need not disprove every reasonable possibility of prejudice." *United States v. Jannotti*, 729 F.2d 213, 219–20 (3d Cir.1984).

■ It is a long-standing rule of this Circuit that evidence of a co-conspirator's guilty plea is inadmissible to prove the guilt of one charged with conspiracy because a defendant has "a right to have his guilt or innocence determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else." *United States v. Toner*, 173 F.2d 140, 142 (3d Cir.1949). In *Bisaccia v. Attorney Gen. of N.J.*, 623 F.2d 307, 313 (3d Cir.1980), *cert. denied*, 449 U.S. 1042, 101 S.Ct. 622, 66 L.Ed.2d 504 (1980), this Court held that the admission of a co-conspirator's guilty plea without limiting instructions from the trial judge combined with the prosecutor's emphasis on the guilty plea as evidence of the conspiracy "so exceeded the tolerable level of ordinary trial error as to amount to a denial of constitutional due process." The law of this Circuit clearly recognizes that substantial prejudice to a defendant's rights can occur where evidence of a co-conspirator's guilty plea is admitted. *See United States v. Tyler*, 878 F.2d 753, 760–61 (3d Cir.1989); *United States v. Newman*, 490 F.2d 139, 143 (3d Cir.1974).

In fact, most of the evidence submitted by the government was related to the shipment and storage of the parts; there was no direct evidence of Thomas's criminal intent and most of the circumstantial evidence of his intent was credibly contested by Thomas. We are not left with the requisite "sure conviction that the error did not prejudice the defendant," and do not conclude that the admission of Thomas's co-conspirators's guilty pleas was harmless error. *See United States v. Jannotti*, 729 F.2d 213, 219–20 (3d Cir.1984).

## V.

For all the reasons stated above, the introduction at trial of evidence of Thomas's co-conspirators's guilty pleas was reversible error. We will reverse the judgment of conviction.

ROSENN, Circuit Judge, dissenting.

I do not agree that the mere admission of the guilty pleas of the co-conspirators in this case constituted reversible error, especially in light of the prosecution's carefully restrained use of the evidence and the trial judge's carefully crafted limiting instructions to the jury. I therefore respectfully dissent.

I would affirm the district court for three independently sufficient reasons: (1) the court correctly admitted the guilty pleas of the co-conspirators into evidence for a proper purpose; (2) even if the court admitted the guilty pleas for an improper purpose, any prejudice to Thomas was cured by the trial judge's limiting instructions; and (3) even if the court admitted the guilty pleas for an improper purpose and the prejudice was not cured by the trial court's limiting instructions, the error was harmless and therefore does not warrant reversal. Each of these reasons, standing alone, justifies affirming the district court.

a. The trial court admitted the guilty pleas for a proper purpose.

I recognize the policy against using a co-conspirator's guilty plea as substantial evidence of another defendant's guilt and that every defendant has the right "to have his guilt or innocence determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else." *United States v. Toner*, 173 F.2d 140, 142 (3d Cir. 1949). However, "evidence of a guilty plea or plea agreement may be introduced for other permissible purposes." *United States v. Gambino*, 926 F.2d 1355, 1363 (3d Cir.), *cert. denied sub nom. Mannino v. United States*, —— U.S. ——, 111 S.Ct. 2800, 115 L.Ed.2d 973 (1991), *and cert. denied, Gambino v. United States*, —— U.S. ——, 112 S.Ct. 415, 116 L.Ed.2d 436 (1991); *United States v. Werme*, 939 F.2d 108, 113 (3d Cir.1991), *cert.*

**1208**

*denied,* —— U.S. ——, 112 S.Ct. 1165, 117 L.Ed.2d 412 (1992).

In this case, the co-conspirators' guilty pleas were introduced for three reasons: (1) to bolster the credibility of the co-conspirators as prosecution witnesses; (2) to quell the inference that the co-conspirators were not prosecuted and that Thomas was thus "singled out" for punishment; and (3) to establish the basis for the co-conspirators' firsthand knowledge of the crime about which they testified. Each of these reasons is a proper purpose for admitting a guilty plea.

The majority in this case concludes that there was no proper purpose for the admission of the guilty pleas of the co-conspirators because defense counsel informed the trial court in his motion *in limine* that he would not elicit on the cross-examination of either of the co-conspirators any facts regarding entry of a plea of guilty, execution of a plea agreement, or granting of immunity. Thus, the majority assert "there was no need to protect the credibility of the prosecution's witnesses from attack by allowing the preemptive introduction of evidence of their guilty pleas." Op. at 1205.

The majority also rejects the second justification by the trial judge that the jury could impermissibly conclude that Thomas alone was being prosecuted on the ground that the judge "could have instructed the jury that they need concern themselves only with the guilt or innocence of the defendant Thomas and that the involvement of any other persons . . . was not this jury's concern."

The majority finally rejects the third reason given by the trial court for the admission of this testimony that such evidence would establish the co-conspirators' acknowledgment of their participation in the offense because they testified about their role in the transportation of the stolen property without facing any challenge from the defense. Op. at 1205–06. I disagree on all three counts.

The district court enjoys broad discretion when deciding whether evidence is admissible, and we must therefore determine whether its decision to admit the co-conspirators'

guilty pleas constituted an abuse of that discretion. *Gambino,* 926 F.2d at 1364.

The most frequent purpose for introducing evidence of a guilty plea is to aid the jury in assessing the witness's credibility. *Werme,* 939 F.2d at 114. "By eliciting the witness' guilty plea on direct examination, the [G]overnment dampens attacks on credibility, and forecloses any suggestion that it was concealing evidence. Such disclosure [of a guilty plea] is appropriate." *Gambino,* 926 F.2d at 1355; *accord United States v. Casto,* 889 F.2d 562, 567 (5th Cir.1989), *cert. denied,* 493 U.S. 1092, 110 S.Ct. 1164, 107 L.Ed.2d 1067 (1990); *United States v. Dworken,* 855 F.2d 12, 30 (1st Cir.1988); *United States v. Louis,* 814 F.2d 852, 856 (2d Cir.1987).

Also, this court has recognized that evidence of a guilty plea may be legitimately introduced when used to quell the inference that the co-conspirators have not been prosecuted and that the defendant has been "singled out" for punishment. *United States v. Inadi,* 790 F.2d 383, 384 n. 2 (3d Cir.1986); *see also United States v. Anderson,* 532 F.2d 1218, 1230 (9th Cir.), *cert. denied,* 429 U.S. 839, 97 S.Ct. 111, 50 L.Ed.2d 107 (1976).

Finally, the Ninth Circuit has held that a co-conspirator's guilty plea is properly admissible in order to explain the witness's firsthand knowledge of the defendant's misdeeds. *United States v. Halbert,* 640 F.2d 1000, 1005 (9th Cir.1981).

Therefore, all of the purposes for which the guilty pleas were admitted into evidence in the case *sub judice* are proper, and the trial court did not abuse its discretion.

The majority contends, however, that there was no need to bolster the co-conspirators' credibility because defense counsel had communicated that he did not intend to impeach the credibility of the witnesses by reference to their guilty pleas. However, this argument is without merit.

First, this court has held that guilty pleas are admissible to bolster credibility even absent a prior attack on credibility. *Gambino,* 926 F.2d at 1363. Moreover, the defense's statement that it did not *intend* to impeach the witnesses by reference to the guilty pleas falls far short of an absolute assurance to the

prosecution that its witnesses' credibility would not be undermined. As the Ninth Circuit has noted, "There are many ways in which a plea may be tactically utilized by the defense and skilled counsel will take advantage of any or all of them as judgment determines." *Halbert,* 640 F.2d at 1005.

Moreover, under the facts of this case, the credibility of the defendant's co-conspiratorial witnesses depended not only on the possibility of impeachment by the defendant, but on the impression that they personally made in the testimony they gave to the jury. Even without any impeachment efforts by the defendant, the jury was not bound to believe their testimony or understand their motivation in testifying against Thomas. Furthermore, without the evidence of the guilty pleas, the jury reasonably could have inferred that the defendant here was being selectively prosecuted or the Government might be concealing pertinent information.

The conspiracy here involved only three conspirators and the credibility of the testimony of the two co-conspirators was critical to the prosecution's case. Their testimony and role in the conspiracy were not marginal but central to the prosecution's case. Thus, the tactical effort of the defense to preempt the prosecution's presentation of its case could not in itself circumscribe the impressions that the jurors were free to make of the credibility of the co-conspirators' testimony or of the selective prosecution of Thomas.

In *United States v. Whitehead,* 618 F.2d 523 (4th Cir.1980), the court was confronted with a similar situation where the defense challenged the prosecution's intention to introduce guilty pleas because the defense had agreed to limit its impeachment questioning. The district court there permitted the evidence, and the court of appeals agreed, stating that "such a limitation on the details of the plea agreements would have been both unfair to the defendants and misleading to the jury." *Id.* at 529. The court continued:

> The prosecution's inquiry into the guilty pleas during its examination was limited to a brief question as to whether the witnesses had entered pleas of guilty to "charges in this case." On each occasion, the district court immediately instructed the jury,

in the language approved in [*United States v.*] *Curry,* [512 F.2d 1299 (4th Cir.1975)], that the pleas could not be considered as evidence against appellants. Under these circumstances, we see no error in the admission of the guilty pleas.

*Id.* at 529–30.

Similarly, in the case *sub judice,* the Government did not unduly emphasize or dwell on the guilty pleas. It made no special effort to draw the jury's attention to the pleas. The trial judge twice admonished the jury with limiting instructions. The district court noted in its memorandum opinion that "the [G]overnment did not improperly emphasize such evidence in its opening to the jury, during the trial or in the closing argument." The Government merely elicited from the two witnesses that they had been indicted and pled guilty, and that their testimony was part of the plea agreement. "No editorial comment or unnecessary elaboration occurred. The brief questions about the existence of the guilty pleas was clearly relevant as bearing on the witnesses' credibility." *Halbert,* 640 F.2d at 1005.

One could argue that credibility is always at issue and that my position thus effectively overrules *Toner.* However, a witness's credibility is only at issue when he or she testifies about a relevant and disputed fact. Moreover, *Toner* merely states that a guilty plea of a witness cannot be used to establish the guilt of the defendant. Thus, even if the guilty plea is always admissible for the purpose of establishing the credibility of the witness, that does not overrule *Toner: Toner* would still require a limiting instruction, similar to the ones given by the trial judge in the present case, to insure that the jury understands that the guilty plea cannot be used to establish the guilt of the defendant.

Also, even if the pleas were not needed to bolster credibility, the pleas remained necessary for the two other proper purposes previously mentioned; to quell the inference that Thomas was singled out for prosecution, *see Inadi,* 790 F.2d at 384 n. 2, and to establish the witnesses' basis for firsthand knowledge of the crime, *see id.* at 1005.

In sum, the guilty pleas were entered into evidence for proper purposes, and thus the district court did not abuse its discretion. Moreover, the defense's assertion that it would not attack the credibility of the witnesses does not alter this result, and we thus should affirm the district court.

b. Even if the pleas were introduced for an improper purpose, any prejudice to Thomas was cured by the trial judge's limiting instructions.

Judge Lee's instructions to the jury eliminated any potential prejudice that might otherwise have been caused by the introduction of the guilty pleas. In *United States v. Tyler,* 878 F.2d 753 (3d Cir.), *cert. denied,* 493 U.S. 899, 110 S.Ct. 254, 107 L.Ed.2d 203 (1989), this court held that any possible error caused by the introduction of guilty pleas was cured by the district court's jury instructions.

Moreover, in both *Gullo* and *Newman* we expressly recognized that appropriate curative instructions can remedy an error in this context, although in those cases we found the instructions lacking. In *Newman,* we indicated that, '... the district court should have instructed that the testimony ... was no proof whatsoever of [the defendant's] guilt and that the testimony proffered should be disregarded completely in determining the guilt or innocence of the [defendant].'

*Tyler,* 878 F.2d at 761; *see also United States v. Newman,* 490 F.2d 139, 143 (3d Cir.1974) (The admission of a guilty plea is not reversible error "provided that cautionary instructions are given."). Therefore, jury instructions can cure improper prejudice.

In the case *sub judice,* Judge Lee issued a preliminary instruction to the jury regarding the testimony of the co-conspirators:

Now, during this trial, you will hear the testimony of Charles C. Copney and Wendell Ronald Charles. You will hear that they were involved in the same crime that the defendant is charged with committing. You should consider ... Copney's and ... Charles's testimony with more caution than the testimony of other witnesses. Do not convict the defendant based on the unsupported testimony of such a witness

standing alone ... *Now, the fact that ... Copney and ... Charles have pleaded guilty to a crime is not evidence that the defendant is guilty, and you cannot consider this against the defendant in any way.*

(emphasis added).

Then, in his final charge to the jury, Judge Lee cautioned:

You have heard evidence, testimony, that witness[es] ... Copney and ... Charles have pleaded guilty to a crime or crimes which arose out of the same event for which the defendant is on trial here. *You must not consider those guilty pleas as any evidence of this defendant's guilt. You may consider those witnesses' guilty pleas only for the purpose of determining how much, if at all, to rely upon those witnesses' testimony ...* You have also heard that they were involved in the same crime ... or crimes that the defendant is charged with committing. You should consider ... Copney's testimony and ... Charles's testimony with more caution than the testimony of other witnesses.

(emphasis added).

Thus, the district court twice plainly and unequivocally warned the jury that it may not use the guilty pleas of the co-conspirators as substantive evidence upon which to base a conviction. Moreover, the court instructed the jury to consider the testimony of the co-conspirators with more caution than an ordinary witness. Therefore, the trial court's limiting instructions prudently avoided the possibility of any prejudice to Thomas as a result of the admission of the guilty pleas.

The majority argues that because this case involved a conspiracy, a curative instruction will not save the conviction:

It is the general rule in this Circuit that while the evidence of a guilty plea by a co-conspirator is not admissible, under some circumstances curative instructions are adequate to remove the harm where the pleas are to substantive counts.

*United States v. Gullo,* 502 F.2d 759, 761 (3d Cir.1974) (citations omitted). The majority cites this as proof that curative instructions are adequate only when the pleas are to

substantive counts and not to conspiracy. This position is untenable.

First, although the *Gullo* court did express that conspiracy cases may have to be scrutinized more carefully than those involving substantive counts, *Gullo,* 502 F.2d at 761, it continued:

> However, we need not decide here whether there should be a distinction between cases where the plea is to a substantive, rather than to a conspiracy count because the combination of events which occurred is enough to necessitate the grant of a new trial.

*Id.* Therefore, the *Gullo* court expressly declined to hold that conspiracy counts are to be treated differently than substantive counts.

Second, this court has stated that adequate jury instructions could have cured the prejudice in a case involving the guilty plea of a co-conspirators:

> Moreover, in . . . *Gullo* [, a case involving the admission of a co-conspirators' guilty plea,] . . . we expressly recognized that appropriate curative instructions can remedy an error in this context, although in those cases we found the instructions lacking.

*Tyler,* 878 F.2d at 761. Thus, that the present case involves a conspiracy rather than a substantive crime does not render the curative instructions inadequate.

The majority next contends that a limiting instruction can only cure prejudice when the guilty plea was introduced for a proper purpose. Op. at 1206–07. However, this court has expressly stated that curative instructions could remedy *an error* in admitting guilty pleas. *Tyler,* 878 F.2d at 761. An error in this context presumably means that a guilty plea was admitted for an improper purpose.

In *Dworken,* 855 F.2d 12, the Government offered the guilty plea of a witness into evidence. The trial court gave the jury cautionary instructions during the Government's opening, when the witness testified, and in the final jury instructions concerning the use of the plea. The prosecution, however, made comments thereafter about the implications of the plea, comparing the witness with the other co-defendants and strongly implied "a logical variant of guilty by association." *Dworken,* 855 F.2d at 31. The court immediately responded with a limiting instruction. Although the court of appeals concluded that the prosecution's statements reached "the level of misconduct . . . because the principal issue on the attempt charge was whether criminal intent could be inferred from the actions of the defendants," it was "convinced that this prosecutorial misconduct did not so prejudicially affect the defendants' rights as to deprive them of a fair trial. *See [U.S. v.] Dougherty,* 810 F.2d [763] at 767 [8th Cir. 1987]." *Id.* The appellate court assumed that the jury heeded the trial judge's repeated insistence that the guilty plea not be used to infer the guilt of those on trial.

In the instant case, the Government neither engaged in any prosecutorial misconduct nor did it dwell on the guilty pleas. Accordingly, I believe that in this case the Government made a legitimate use of the guilty plea. Unlike *Dworken,* the prosecution here guarded and limited its use, and the trial court's painstaking and repeated cautionary instructions provided adequate guarantee that Thomas would not be prejudiced. If the curative instructions in *Dworken* sufficed to obviate prejudice to the defendant in that case, then surely Judge Lee's instructions removed any prejudice potentially derived from the introduction of the guilty pleas in the present action.

In short, there were adequate limiting instructions in this case to cure any potential prejudice that Thomas may have suffered. As a result, Thomas's conviction should be affirmed.

> c. Even if the pleas were introduced for improper purposes and the limiting instructions did not cure the prejudice, the error was harmless and thus does not warrant reversal of the district court.

Assuming *arguendo* that the introduction of the pleas into evidence constituted an abuse of the trial court's discretion, it was harmless error. An error is harmless if it is "highly probable" that it did not affect the defendant's substantial rights. *Werme,* 939 F.2d at 116–17. Accordingly, high probability requires that a reviewing court must have "a sure conviction that the error did not prejudice the defendant, but need not dis-

**1212**

prove every reasonable possibility of prejudice." *United States v. Jannotti*, 729 F.2d 213, 219–20 (3d Cir.), *cert. denied*, 469 U.S. 880, 105 S.Ct. 243, 83 L.Ed.2d 182 (1984).

The evidence at trial showed that Thomas, without permission, absconded with several truckloads of parts and equipment and stored them at Hopwood Industries, which was owned by one of the co-conspirators, and at his own garage. He did not document or tag the property to insure its safe return. The prosecution then informed the jury that Thomas tried to return or abandon this property when he learned that an investigation had been commenced. Moreover, his two co-conspirators testified that his planned intent was to steal the equipment.

It strains credulity that the majority feels that "most of the circumstantial evidence of his intent was credibly contested by Thomas." Op. at 1207. Thomas rebutted the evidence outlined above with the incredible claim that he transported the equipment in order to temporarily store it on private property because there was no room to do so on Government property. However, Thomas admitted that he did not seek permission to store the equipment on private property, and he suddenly found room to store it on Government property when he learned that an investigation was under way. Moreover, two co-conspirators testified of Thomas's intent to steal the property. Thomas's self-serving testimony is so totally incredible in the face of contradictory direct and circumstantial evidence that the requisite intent was most likely proven without reference to the guilty pleas. Thus, their admission, if improper, constituted harmless error.

Therefore, it is unlikely that the admission of the guilty pleas had an affect on the substantive rights of Thomas because the evidence of his guilt was so clear. As a result, any error that did occur at the trial was harmless and cannot support a reversal of his conviction.

Accordingly, each of the foregoing reasons, standing alone, justifies affirming the district court. I therefore respectfully dissent.